24 N.J. Super. 337 (1953)
94 A.2d 519
DANIEL F. KEEGAN, APPELLANT,
v.
WILLIAM H. GILFERT, CLERK OF HUDSON COUNTY, AND DEPARTMENT OF CIVIL SERVICE OF THE STATE OF NEW JERSEY, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 22, 1952.
Decided January 27, 1953.
*338 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. Raymond Chasan argued the cause for appellant.
Mr. John W. Griggs, Deputy Attorney-General, argued the cause for respondent (Mr. Theodore D. Parsons, Attorney-General of New Jersey, attorney).
The opinion of the court was delivered by GOLDMANN, J.A.D.
Appellant Keegan, a disabled war veteran, ranked first in a competitive examination conducted by the Department of Civil Service for the position of naturalization clerk for Hudson County. Despite that fact, one Mary M. Carty, ranking fifteenth on the list, was certified and appointed under circumstances hereinafter set forth. Keegan appealed to the Department from the certification and appointment and requested a hearing. The Department rejected the appeal by a letter decision, termed a "Conclusion and Determination," without argument or the taking of testimony. Keegan appeals pursuant to Rule 3:81-8.
*339 It would appear that the county clerk's office in Hudson County has for many years investigated persons making application for citizenship. Regular employees of the county clerk interviewed and assisted aliens in their attempts to become citizens. At some time prior to September 16, 1949 the county clerk created the position of "Special Investigator" and on that date appointed "May" M. Carty thereto at an annual salary of $4,000 as a permanent and full-time employee. The "Personnel Action Form" filed with the Department of Civil Service by the deputy county clerk as appointing authority described the individual tasks to be performed by the appointee as follows:
"Investigating persons making application for citizenship; filing of business names wherein a business is conducted under an assumed name and Veterans Licenses for peddling, hawking and vending of merchandise in Hudson County, N.J.
Familiarizing ones self with the functions and duties required of one serving in the Naturalization Bureau also serving as a supervisor in the Record Room where many papers are asked for each day and seeing to it that the papers are not removed and that they are returned to their proper places.
Will be expected to gain a knowledge of all the functions of the County Clerk's Office and when sickness or any other reason may happen to anyone connected with the office, to fill in such position."
The tasks were clearly those theretofore carried on by regular employees of the county clerk's office. The only qualifications for the position were: "Desirable Age: Over 30 years. Years of experience: Five years." There was no indication that a man or a woman would be better qualified or more desirable for the position.
On June 1, 1950 the Department of Civil Service approved the "temporary appointment" of Miss Carty "to the position of naturalization clerk, pending an open competitive examination." Just how this new title originated is not clear. On September 4, 1951 the Department of Civil Service in its printed bulletin of forthcoming open competitive examinations announced:

*340 "NATURALIZATION CLERK (C34)

Salary $4000 per annum.
Open to male and female citizens, 12 months resident in Hudson County.
DEFINITION:
Under direction, does specialized clerical work; investigates persons making application for citizenship; is responsible for a file for licensing for peddling, hawking and vending of merchandise; assists in carrying out the function of the Naturalization Bureau; supervises a Record Room where papers filed with the County Clerk are kept; does related work as required.
REQUIREMENTS:
1. Formal education or other education or training showing attainment of the level represented by graduation from high school.
2. Three years of experience in work involving the handling of highly technical clerical work.
3. Freedom from physical defects which would prevent efficient performance of the duties of the position.
Examination Weights: Education and Experience: 2; Written Test: 5; Oral Test: 3."
Here, again, it would appear that the prescribed duties were those that had been regularly performed by employees of the county clerk's office. There was no requirement of a particular sex; on the contrary, the position was expressly "Open to male and female citizens, * * *." The duties generally were those of the position to which Miss Carty had temporarily been appointed.
The written and oral parts of the examination were held on November 2 and December 7, 1951, respectively. On January 28, 1952, two days before the list of eligible applicants was made public by the Department of Civil Service, the County Clerk of Hudson County wrote the Newark office of the Civil Service Commission stating that he "would suggest" that only the names of women be certified as eligible for appointment. The reason given was that:
"* * * In view of the fact that we have a great many women who come in to discuss their situations, I am firmly of the opinion that they would much prefer to discuss it with a woman and, I think that a woman would be more qualified because she would be more patient and understanding."
*341 The eligible roster was promulgated January 30, 1952. It revealed that of 97 applicants, 69 had taken the examination and only 20 passed. Of the latter, 13 were veterans, and Keegan headed the list. His written score was 81.000, oral score 82.500, experience or seniority score 81.000, and final average 81.450. Miss Carty had a written score of 70.000, oral score of 88.125, experience or seniority score of 93.000, and final average of 80.038. Her written score was the lowest on the roster, and the lowest possible passing score. She achieved her general average only by virtue of scoring 93.000 for experience or seniority, the highest on the list. This score was unquestionably the fruit of her "temporary appointment" of more than two years. (See R.S. 11:22-15 as to the duration of temporary employments.)
On January 30, 1952 the Civil Service Commission certified the names of the three highest women for appointment. They ranked 9th, 14th and 15th on the roster. Miss Carty's name was third on this list; on March 13, 1952 the county clerk reported her appointment to the Department of Civil Service.
Appellant did not know of the letter sent by the county clerk to the Civil Service Commission on January 28, 1952, nor of the Commission's determination to certify only female applicants. On April 25, 1952 Keegan, through his attorney, notified the Department of Civil Service of his appeal and requested an opportunity to be heard. In its letter "Conclusion and Determination" rejecting the appeal the Civil Service Commission stated that it had made its certification on the basis of the county clerk's request of January 28 preceding. After referring to R.S. 11:22-17 and Rule 42 of the Civil Service Rules, the letter stated:
"It is the feeling of this Commission that the appointing authority acted within the purview of the statute in this particular case and if there is a question as to the legality of the statute this Commission is not the tribunal to rule and substitute its judgment for the Legislature."
*342 The county clerk who, as appointing authority, created the situation complained of, does not defend the appeal. Instead, he has permitted the burden of justifying the certification and appointment to fall entirely upon the Department of Civil Service.
Appellant claims that the veterans' preference laws control in the circumstances, and that under N.J.S.A. 11:27-3 and 11:27-4 the Department was obliged to certify his name, and the county clerk to appoint him. In Bergen County v. Civil Service Commission, 137 N.J.L. 688, 691 (E. & A. 1948), the former Court of Errors and Appeals held that the provisions of those statutes were mandatory. Unless R.S. 11:22-17 or Rule 42 of the Civil Service Rules interposes an overriding consideration, appellant must prevail.
Rule 42 provides in part:
"* * * If the duties and responsibilities of the vacant position and the conditions under which the work is to be done are such as require an employee of a particular sex the chief examiner and secretary shall cause to be certified the names of eligibles of the sex required. * * *"
Although the Department's "Conclusion and Determination" quotes this rule, the decision does not purport to rely upon it. There is no indication that the chief examiner and secretary on his own motion limited the certification to women. Nor did he make any finding that the duties and responsibilities of the naturalization clerk and the conditions under which the work was to be done were "such as require an employee of a particular sex." The Department expressly based its decision on the county clerk's request and on R.S. 11:22-17 which provides:
"A candidate, other than a veteran as defined in section 11:27-1 of this title, who has been certified three times by the [civil service] commission and not accepted by an appointing authority, shall not again be certified to him, except at the request of such appointing authority.
In making the certification sex shall be disregarded, except when a statute, the rules of the commission or the appointing authority shall specify a particular sex." (Italics ours.)
*343 The language of the latter paragraph is almost exactly that of the original Civil Service Act (L. 1908, c. 156, sec. 21). The text of the first paragraph is taken from the same source, except for the words "other than a veteran as defined in section 11:27-1 of this title." This clause first appeared in its present setting in the 1932 amendment to section 21 of the act (L. 1932, c. 122, sec. 2).
The second paragraph of R.S. 11:22-17 does not become a nullity by the mere accident of a candidate's being a veteran. It is neither inconsistent with nor overridden by N.J.S.A. 11:27-3 and 4, and applies to veterans as well as non-veterans. We may take judicial notice of the fact that in the competitive class of the classified civil service there are many situations where one sex is to be preferred over the other. We would not expect the appointing authority to specify other than a man for employment as a State Prison guard, or a woman for the position of nurse in a municipal prenatal clinic. The nature of the job often dictates the sex of the prospective employee. An appointing authority is not to be precluded from specifying, in a proper situation, that the Department of Civil Service certify men only, or women only. Where such a request is made the veterans' preference laws will control the certification and appointment of candidates (male, female) who have successfully passed the civil service examination.
Counsel for respondent Department relies upon the efficacy of R.S. 11:22-17 and argues its applicability in the circumstances. He suggests that the "decision" of the county clerk in preferring a female rather than a male as naturalization clerk is a "decision of fact" which should not lightly be disturbed by the Department or by this court. The argument presupposes that there was such a decision in this case and that it was based on valid considerations.
The language of R.S. 11:22-17 is clear enough. Generally, sex is not to be considered in making a certification. If the appointing authority desires a person of a particular sex he must so "specify." If the county clerk intended to *344 specify the female sex, he did not use the clear and positive language of decision in his letter to the Civil Service Commission. He employed such terms as "I would suggest" and "I shall deeply appreciate"  that only women be certified. This is not the language of specification, of definite decision, directing that the Commission take specific action. The approach is exploratory and tangential; it would almost seem as though the county clerk were testing out the possibility of obtaining a limited certification, hoping for a favorable reaction from the Commission.
But treating the county clerk's letter as a specification of a particular sex under R.S. 11:22-17, the question remains whether the specification has a valid basis. Was it made in good faith and is there any real and rational relationship between the county clerk's suggestion and the object to be accomplished thereby?
That there should be such a relation is made manifest by Civil Service Rule 42 promulgated to supplement the provisions of R.S. 11:22-17. Although the statute gives the appointing authority a broad discretion in specifying that a particular sex be certified for a position, such discretion is not absolute and unqualified. To paraphrase Rule 42, the inquiry should always be whether the duties and responsibilities of the position and the conditions under which the work is to be done are such as reasonably to require one sex rather than the other. That question seems to have received little, if any, attention by the Civil Service Department, for it acted on the county clerk's suggestion within a space of 24 hours. Its counsel frankly concedes that further inquiry into the validity of the request is advisable, although pointing out that in most cases the Department should and does follow the appointing authority's "decision of fact." Such an administrative policy has its obvious practical advantages, but it should not be applied mechanically in every instance.
The sequence of events preceding the certification will be meaningful in determining the bona fides of the county clerk's request. He had not called for a particular sex in *345 setting up the qualifications for the position of "special investigator" in September 1949. He attempted to give Miss Carty a permanent appointment to that newly created position, in disregard of civil service regulations. The Department having approved only of her temporary appointment as "naturalization clerk" pending examination, the county clerk then allowed Miss Carty to enjoy her temporary status far beyond the time normally allowed by the statute, R.S. 11:22-15. After two years, the Department called for a competitive examination for her position, open to male and female citizens alike of Hudson County. If the county clerk had notified the Department immediately after the announcement appeared that he wanted a woman only for the job, it could then have thoroughly examined into the request, as it should in every case, to determine whether the request was justified in the light of the required tasks and conditions of work. However, he remained silent and forwarded his suggestion on the eve of the promulgation of the eligible roster.
As for the county clerk's suggestion being grounded in valid considerations, the Department of Civil Service will have to determine what there is in the particular duties, responsibilities and work conditions of the position of naturalization clerk that calls for a woman rather than a man. The tasks involved appear to be essentially the same as those carried out by undifferentiated members of the county clerk's regular staff before September 1949. Was there anything in the work then, or is there anything now, which calls for the "more patient and understanding" nature of a woman, as the county clerk puts it in stressing the importance of a female counselling service? Are we to assume that all or even a majority of the aliens who seek the help of the Hudson County Clerk's office are women? It is to be noted that the county clerk in his letter to the Commission says that women prefer to discuss their naturalization problems with a woman, but he states this merely as his opinion. So qualified a statement is, of course, neither a "decision of *346 fact" nor a finding of fact, as the Department seems to have viewed it. Do the other duties of the naturalization clerk  doing specialized clerical work, keeping a file of peddlers', hawkers' and vendors' licenses, supervising the record room, and doing related office work as required  call for a finer degree of sensitivity than a man might possess?
The matter is therefore remanded to the Department with the direction that it conduct a full hearing to determine (1) whether the request of the county clerk was made in good faith, and (2) if so, is there any reasonable relation between his request that only women be certified and the duties, responsibilities and work conditions of naturalization clerk.
FRANCIS, J.C.C. (temporarily assigned) (concurring).
I am in complete agreement that the matter should be remanded to the Civil Service Commission for hearing.
However, certain statements in the opinion sanction a greater supervisory authority in the Civil Service Commission over appointment to the classified civil service than appears to be warranted by the pertinent legislation.
The opinion indicates that if a position can be filled equally well by either a male or a female and the appointing authority in good faith specifies a particular sex, the Civil Service Commission may override that specification and open the examination to both sexes. With this conclusion I cannot agree.
If the position "requires" a particular sex, then under the statute and Rule 42 the Commission's mandate on the subject would be binding. However, if the duties of the employment do not require one sex, and sex is immaterial from the standpoint of convention or of capacity to discharge the duties, then an honest choice of a particular sex is within the ambit of the authority delegated by the Legislature to the appointing officer.
The second paragraph of R.S. 11:22-17 demonstrates a legislative intention to have the sex of candidates for classified *347 service positions disregarded, except in three situations. They are: (1) where a statute designates a particular sex, (2) where under the rules of the Commission a particular sex is named, or (3) where the appointing authority specifies a particular sex.
In the present situation we are dealing only with the third alternative. It is observed that with respect to the designation of a particular sex by the appointing authority, the Legislature imposed no qualifying conditions. It appears to have invested the appointing authority with discretion to select one sex for a particular position, even though, upon analysis of the work involved, it is plain that both sexes are equally qualified. Consequently, if the county clerk had specified originally, in good faith, that the position here was open to a female only, that specification would have been controlling.
Appellant argues that the circumstances surrounding the Carty appointment inferentially point to a plan by the county clerk to subvert the policy of the civil service legislation. The argument is that the failure to specify that the position was open to a female only, and the positive statement in the prospectus of the examination that the position was open to a member of either sex, were deliberate. The claim is that since, to the knowledge of the public generally, there are so many male war veterans with service credits and preferences in such examinations, a public announcement opening the examination to both sexes would have the effect of deterring females from an effort to qualify. Then by such means having accomplished a limitation on the number of females who took the examination, the specification by the appointing authority that only a female qualifier was desired for the position, considerably enhanced the chances of accomplishing the naming of the predetermined appointee. And it is charged in this case that the plan accomplished its purpose.
Under the circumstances, when appellant protested the appointment of the recipient of the employment, the Commission *348 should not have disposed of the matter summarily by declaring in effect that the county clerk had the right as a matter of law to make the designation as and when he did. A hearing should have been allowed, at which the full facts of the matter could have been presented. The issue then for determination would be: Were the specification and appointment made in good faith or were they made arbitrarily and for the sole purpose of avoiding the appointment of appellant and accomplishing the appointment of Miss Carty?